1. By order dated September 27, 1994, the court consolidated these cases under this cause number.

whether Simmons's property is entitled to an economic obsolescence adjustment because of its neighborhood; and 2) whether Simmons's financial statements, as they relate to the causes of functional and economic obsolescence in 50 I.A.C. 2.1–5–1, demonstrate such an adjustment is warranted.

**RILEY AT JACKSON REMONSTRANCE GROUP, an Association, Sue Barnes, Joanna Blacketor, Lawna Graf, Judith Overmyer, Jack Saylor and David Varner, individuals, Tax Appellants,**

v.

**INDIANA STATE BOARD OF TAX COMMISSIONERS, South Bend Community School Corporation, Riley/Jackson School Building Corporation, Respondents.**

**Thomas BRADEMAS, et al., Petitioners,**

v.

**SOUTH BEND COMMUNITY SCHOOL CORPORATION, et al., Respondents.**

No. 71T10–9408–TA–00205 [1].

Indiana Tax Court.

Nov. 10, 1994.

John C. Hamilton, Doran Blackmond Ready, Hamilton & Williams, South Bend, for tax appellants.

Thomas Brademas, pro se.

Pamela Carter, Atty. Gen., Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent State Bd. of Tax Com'rs.

Thomas J. Brunner Jr., Kevin D. O'Rear, Baker & Daniels, South Bend, for respondent School Corp. and School Building Corp.

FISHER, Judge.

The Tax Appellants, the Riley at Jackson Remonstrance Group, Sue Barnes, Joanna Blacketor, Lawna Graf, Judith Overmyer, Jack Saylor, David Varner, and Petitioner Thomas Brademas (collectively the Remonstrance Group), appeal a final deter-mination of the State Board of Tax Commis-sioners (the State Board). The Remon-strance Group contests the State Board's July 11, 1994, order approving in part and disapproving in part a school construc-tion/renovation project proposed by the Re-spondents, the South Bend Community School Corporation (the School Corporation) and the Riley/Jackson School Building Cor-poration (the Building Corporation). The Remonstrance Group alleges that because the State Board determined the renovation of the Jackson Middle School was unnecessary, the School Corporation and the Building Cor-poration could not proceed with plans to construct a new Riley High School without offering taxpayers an opportunity for a new public hearing and remonstrance. The mat-ter is now before the court on the Remon-strance Group's motion for judgment on the pleadings under Ind.Trial Rule 12(C).

### *ISSUE*

Whether the State Board's July 11, 1994, order finding the Jackson Project unneces-sary, permits the School Corporation and the Building Corporation to proceed with the Riley Project without offering taxpay-ers an opportunity for a new public hear-ing and remonstrance.

### *FACTS AND PROCEDURAL HISTORY*

The South Bend Community School Corpo-ration is a public school corporation in St. Joseph County, Indiana. It covers a geo-graphic area of approximately 160 square miles, and operates five high schools, five middle schools, twenty-five elementary schools, and various other ancillary facilities.

Several years ago, the School Corporation proposed the demolition of Riley High School, on the southeast side of South Bend, and the subsequent construction of a new four-story high school as its replacement (the Riley Project). To coincide with the Riley Project, the School Corporation also pro-posed the renovation of nearby Jackson Mid-dle School (the Jackson Project). The School Corporation estimated that both projects to-gether would cost $65,365,000, not including interest.

After examining several feasibility studies, the School Corporation decided to pursue both projects and approved the form of the lease rental agreement on August 16, 1993. The lease rental agreement called for the Building Corporation to issue bonds to fund both projects. Once the projects were completed, the School Corporation would lease the new Riley High School and the renovated Jackson Middle School from the Building Corporation. The terms of the lease rental agreement called for the School Corporation to make graduated payments beginning at $3,850,000 per year, including interest, and increasing to $5,200,000 per year, including interest, for a period of 23 years.

On October 4, 1993, the School Corporation received preliminary approval of the lease rental agreement from the State Board. On November 15, 1993, the School Corporation executed the lease rental agreement and gave notice by legal advertisement of its final execution. In response to the legal advertisement, the Remonstrance Group filed petitions objecting to the lease rental agreement with the St. Joseph County Auditor under IND.CODE 21–5–11–7(c).[2] In those petitions, the Remonstrance Group complained that the lease rental agreement failed to take into account less expensive alternatives and would cause an unnecessary property tax increase. Specifically, the Remonstrance Group alleged that the lease rental agreement failed to recognize that the Jackson Middle School, originally built to serve as a high school, could ·be converted to a high school[3] and the Riley High School, a facility built in 1924 with classrooms designed to accommodate elementary school students, could be converted to a middle school, for a total cost, not including interest, estimated at $39,391,515—approximately $26,000,000 less

than the project proposed by the School Corporation and the Building Corporation.

The county auditor immediately certified copies of the Remonstrance Group's petitions to the State Board. On February 9, 1994, the State Board held a hearing on the Remonstrance Group's petitions, and on March 29, 1994, the hearing officers assigned to the case recommended that the "lease should not be approved." *Hearing Officer Report* at 4 (attached as Exhibit B to Tax Appellants' Verified Original Tax Appeal). The Hearing Officer Report also stated:

> While there is need to replace the current Riley facility, it was not demonstrated that the current proposal was the optimal plan for the students or the taxpayers of the South Bend Community Schools. No information was presented to demonstrate that the plan offered by those in opposition to the project was either educationally inadequate or that the cost calculations concerning the [Remonstrance Group's] alternative plan were incorrect.

*Hearing Officer Report* at 4 (attached as Exhibit B to Tax Appellants' Verified Original Tax Appeal). In addition, the Proposed Findings and Order accompanying the report stated:

> Having been presented with an alternative plan [by the Remonstrance Group] to accommodate the educational needs of the students at a cost that is significantly less than the proposal from the school corporation, and in the absence of information to indicate that the alternative plan ... is either educationally inadequate or that the cost estimates are erroneous, it can not [*sic*] be found that the project proposed by the school corporation is necessary, or that the lease is fair and reasonable.

2. I.C. 21–5–11–7(c) provides that after a school corporation authorizes the execution of a lease rental agreement, it shall publish notice of the execution of the lease rental agreement. If, upon receiving the notice, fifty (50) or more taxpayers are of the opinion that no necessity exists for the execution of the lease or that the proposed rental is not fair and reasonable, they may file a petition with the county auditor. Upon the filing of such a petition, the county auditor shall certify a copy of the petition to the State Board. The State Board is required to hold a hearing on the petition.

3. Jackson High School and LaSalle High School were constructed in 1965 pursuant to the same set of plans. Jackson was closed as a high school and converted to a middle school in 1975. LaSalle continued to operate as a high school and was renovated and expanded in 1971 and 1992. The Remonstrance Group claims that Jackson could once again serve as a high school by merely undergoing ·the same renovations and expansions as LaSalle.

*Hearing Officers' Proposed Findings and Order* at 7 (attached as 'Exhibit B to Tax Appellants' Verified Original Tax Appeal).

The State Board then referred the lease rental agreement to the School Property Tax Control Board for recommendation. At its meeting on May 26, 1994, the School Property Tax Control Board considered additional evidence and testimony and voted to approve the lease rental agreement. Minutes of the meeting state:

> [A] motion was made ... to recommend approval of the lease with a maximum payment of $5,200,000 not to exceed twenty-three (23) years. Motion seconded.... Motion carried.

*Minutes from May 26, 1994, School Property Tax Control Board Meeting* at 8 (attached as Exhibit C to Tax Appellants' Verified Original Tax Appeal).

On June 29, 1994, the State Board held a special hearing to receive evidence on the following issues:

> (1) The benefits or deficiencies of the 1971 LaSalle High School Expansion plans as they relate to the use of Jackson Middle School as a high school, including compliance with Department of Education standards.
>
> (2) An explanation of the cost estimates for renovating Jackson Middle School as either a high school or a middle school.
>
> (3) A rationale for why the renovation to Jackson Middle School must be accomplished to the extent proposed, given the building is currently operating as a middle school.

Subsequently, on July 11, 1994, the State Board issued its Findings and Order in which it stated:

> (12) While the State Board has concerns about several issues related to the four (4) floor design of the new Riley High School, the Tax Commissioners must yield to the judgment of the local officials, the architects, and the State Department of Education, all of whom have approved the proposed plans....
>
> (14) The existence of a need at the Riley building is not disputed by anyone. The school corporation has carefully reviewed several alternatives and has chosen the project presented for a combination of economic and educational reasons. *While it appears that the Jackson portion of the project is not necessary, the Riley portion of the project is necessary ...*
>
> NOW THEREFORE, after careful consideration, the State Board of Tax Commissioners takes the following actions:
>
> The petition objecting to the lease agreement between the South Bend Community School Corporation and the South Bend Community School Corporation Riley/Jackson School Building Corporation is denied. The lease agreement is approved for a term of twenty-three (23) years with annual payments not to exceed $3,800,000, *however the proceeds from the sale of bonds that will be retired by this lease may not be used for renovations or additions to Jackson Middle School....*

*State Board's July 11, 1994, Findings and Order* (attached as Exhibit E to Tax Appellants' Verified Original Tax Appeal) (emphases added).

On August 3, 1994, the Remonstrance Group filed this original tax appeal. On August 22, 1994, the Remonstrance Group filed a motion for judgment on the pleadings under Ind.Trial Rule 12(C). This motion for judgment on the pleadings is now before the court.

## STANDARD OF REVIEW

■ "A party moving for judgment on the pleadings admits, for the purposes of the motion, all facts well pleaded and the untruth of his own allegations which have been denied." *Thompson v. Genis Building Corp.* (1979), 182 Ind.App. 200, 201, 394 N.E.2d 242, 243. Further, "[a]ll reasonable intendments and inferences are to be taken against the movant." *Id.* Accordingly, a motion for judgment on the pleadings should be granted only when: 1) the pleadings present no material issues of fact, and 2) the facts as shown by the pleadings entitle one party to judgment. *Id.* at 201–202, 394 N.E.2d at 243.

## DISCUSSION AND ANALYSIS

The facts of this case are not disputed; the only dispute is how the law applies to those facts. The law at issue includes I.C. 21–5–11–7 and IND.CODE 6–1.1–19–8(b). I.C. 21–5–11–7(c) provides:

The decision of the state board of tax commissioners on such appeal [brought under I.C. 21–5–11–7(c) ], *upon the necessity for the execution of said lease and as to whether the rental is fair and reasonable* shall be final.

(Emphasis added). I.C. 6–1.1–19–8(b) provides:

The state board of tax commissioners may *either approve or disapprove* a school corporation's proposed lease rental agreement, bond issue or school bus purchase loan.

(Emphasis added). The parties disagree about what constitutes an "approval" by the State Board under I.C. 6–1.1–19–8(c) when it considers an appeal under I.C. 21–5–11–7(c). Specifically, they disagree as to whether I.C. 6–1.1–19–8(b) requires an approval of *all* the terms of a proposed lease rental agreement before a construction/renovation project may proceed, or whether a conditional approval of *some* of the terms is sufficient to allow a construction/renovation project to proceed. It is unnecessary, however, to decide what constitutes an "approval" under I.C. 6–1.1–19–8(b) because I.C. 21–5–11–7 alone is dispositive.

It is a familiar rule of statutory construction that words and phrases are to be given their plain, ordinary, and usual meaning. *Harlan Sprague Dawley Inc. v. Indiana Dept. of State Revenue* (1992), Ind.Tax, 605 N.E.2d 1222, 1225. The plain language of I.C. 21–5–11–7(c) establishes that when the State Board acts on an appeal under I.C. 21–5–11–7(c), it has the authority to decide: 1) whether the lease rental agreement is necessary, and 2) whether the rental payments are fair and reasonable. In this case, the State Board determined that "the Jackson portion of the project [was] not necessary, [but] the Riley portion of the project [was] necessary." *State Board's July 11, 1994, Findings and Order* (attached as Exhibit E to Tax Appellants' Verified Original Tax Appeal). In doing so, the State Board determined that the lease rental agreement as presented was not necessary. The State Board did not specifically comment on whether the rental payments were fair and reasonable. The State Board did, however, indicate that annual rental payments for the Riley Project alone could not exceed $3,800,000.

It does not matter whether the State Board's July 11, 1994, order is characterized as an approval or a disapproval of the lease rental agreement within the meaning of I.C. 6–1.1–19–8(b) because the School Corporation and Building Corporation cannot proceed under the original lease rental agreement. The School Corporation and the Building Corporation can proceed with the construction of a new Riley High School only if they excise all references to the Jackson Project. Excising all references to the Jackson Project will require the drafting of a *new* lease rental agreement. A new lease rental agreement requires a public hearing pursuant to I.C. 21–5–11–7(a) and (b)[4] and an opportunity for a new remonstrance under I.C. 21–5–11–7(c).[5]

## CONCLUSION

For the foregoing reasons, the court holds that the State Board found that the lease rental agreement was not necessary. Any

---

4. I.C. 21–5–11–7(a) and (b) provide that when a lessor corporation and school corporation agree upon the terms of any lease and before the final execution of such lease, they must publish notice and hold a public hearing on the proposed lease. At the hearing, all interested persons shall have the right to be heard upon the necessity for the execution of the lease and whether the rental provided for therein is fair and reasonable.

5. The court notes that the need for a new public hearing and remonstrance is further indicated by an apparent increase in the cost of the Riley Project. Under the original lease rental agreement, the Riley Project alone cost $68,674,000, including interest, with graduated rental payments over a period of 23 years not to exceed *$3,120,000*. The State Board's July 11, 1994, order, however, allows the School Corporation and the Building Corporation to enter into a 23 year lease with rental payments not to exceed *$3,800,000*. Thus, under the State Board's order, the cost of the Riley Project would exceed $68,-674,000.

lease rental agreement drafted by the School Corporation and the Building Corporation in response to the State Board's July 11, 1994, order will be a new lease rental agreement and must be submitted to the public for a hearing pursuant to I.C. 21–5–11–7(a) and (b), as well as a remonstrance under I.C. 21–5–11–7(c). Accordingly, the court GRANTS the Remonstrance Group's motion for judgment on the pleadings. The case is RE-MANDED to the State Board, the School Corporation, and the Building Corporation for action consistent with this opinion.